[No. 39433.    Department One.    May 2, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. SHEDRICK STEWART, *Appellant*.*

*Hohlbein, Church, Sawyer & VanDerhoef*, by *James D. Sawyer*, for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *David A. Berner*, for respondent.

*Reported in 440 P.2d 815.

WEAVER, J.—Defendant, Shedrick Stewart, was charged and convicted of the crime of assault in the second degree upon Daniel Hart, Jr., and of the crime of murder in the second degree for killing Patricia Ann Jackson during his assault on Daniel Hart, Jr. The jury found that defendant was armed with a deadly weapon at the time the crimes were committed.

The charges spring from the following facts, which the jury was entitled to believe.

Defendant and his brother-in-law, Daniel Hart, Jr., came from Louisiana to work in Seattle. They found lodging with the Hudson Jackson family, whom defendant had known in Louisiana. After a week's stay, defendant and Hart rented an apartment a short distance from the Jackson home. It appears that defendant was paying the major portion of their expenses.

July 17, 1966, an altercation occurred between defendant and Hart over the latter's failure to pay his share of a large long-distance telephone bill. Hart testified that during the altercation defendant threatened to kill him.

As Hart drove away from the apartment in his automobile, defendant rushed to the apartment, secured a rifle, and aimed it at the car. No shot was fired.

Hart, having members of the Hudson Jackson family in his car, drove to their residence where they watched television. Hart and Mr. Jackson were seated in chairs facing the front door; the three Jackson daughters and a son were seated along the stairway, with Jackson's daughter, Patricia, seated on the landing.

At this point the evidence is conflicting. Shortly after the altercation at the apartment, defendant came to the Jackson home carrying a .22-caliber rifle wrapped in a pair of blue jeans. He testified that he knocked on the door and walked into the house. Other witnesses testified that he did not knock, but entered unannounced.

Defendant unwrapped the rifle from the blue jeans. As he pointed the rifle at Hart, who was about 5 feet away, the latter sprang to his own defense and pushed the rifle up

and away. As it came down, the rifle was discharged. Patricia Jackson died as a result of this bullet which struck her. Mr. Jackson was not involved until after the shot was fired; he then helped Hart disarm the defendant.

Count 1 of the information is based upon RCW 9.11.020 (4):

> Every person who, under circumstances not amounting to assault in the first degree—
>
> . . . .
>
> (4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm;
>
> . . .
>
> . . . .
>
> Shall be guilty of assault in the second degree and be punished by imprisonment in the state penitentiary for not more than ten years or by a fine of not more than one thousand dollars, or by both.

We note that the seven sections of the statute are in the alternative; each is a ground for assault in the second degree. Subsection (4), quoted *supra,* is the only one applicable to the instant case. The crux of the crime is a "wilful assault . . . with a weapon . . . likely to produce bodily harm." Evidence that establishes (a) that the assault was willful and (b) that the instrument used was likely to produce bodily harm is sufficient to support the conclusion that the accused is guilty of assault in the second degree. It is the intentional or willful assault that constitutes the crime. This is succinctly stated in *State v. Rush,* 14 Wn.2d 138, 127 P.2d 411 (1942):

> We are committed to the rule that an assault is an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented.

Defendant's first two assignments of error must be considered together. They are:

First: the court erred when it gave instruction No. 6:

> If a person willfully assaults another with a weapon or other instrument or thing likely to produce bodily harm, he is guilty of the crime of assault in the second degree,

whether or not he entertained a design or intent to cause such bodily harm. The gist of the offense is the intentional attack with a weapon which might cause such harm, and whether or not the attacker intended or thought of the harm which might result is not material.

Second: the court erred when it refused to give requested instruction No. 1:

You are instructed that, to find the defendant Guilty of the Crime of Second Degree Assult [sic], you must find that there must be shown specific intent on the part of the defendant to commit Assult [sic].

The basis of defendant's objection to instruction No. 6 is that it withdraws from the jury's consideration a necessary element of the crime of second degree assault: specific intent. We do not agree.

■ The crucial word in the statute and in the instruction is "wilfully." Even appellate counsel (who did not try this case in the superior court), admits in his brief that "had this instruction (No. 6, *supra*) defined 'willfully' it may have been proper. . . ."

Further definition was not necessary. In *State v. Spino,* 61 Wn.2d 246, 377 P.2d 868 (1963), this court said:

The term "wilfully" is not ambiguous. As used in criminal statutes, it means intentionally and designedly.

Prior decisions of this court support the definition set forth in *Spino, supra.* In *State v. Vanderveer,* 115 Wash. 184, 196 Pac. 650 (1921), it is stated that "An act done willfully is done *intentionally* and designedly." (Italics ours.) In *State v. Evans,* 32 Wn.2d 278, 201 P.2d 513 (1949) (a second degree assault case), the court pointed out that "A willful act is one done intentionally, not accidentally."

Instruction No. 6 did not withdraw specific intent as a necessary element of the crime of second degree assault. Requested instruction No. 1 would add nothing to the instruction given and it was not error to refuse it.

Defendant's third assignment of error is directed to the court's failure to give his requested instruction No. 2:

You are instructed that in order that there be an Assult [sic] Case, there must be shown that the one al-

legedly assulted [*sic*] had his mind in a state of fear and apprehension at the time.

■ Apprehension and fear experienced by a person at whom a gun is pointed may be inferred, unless he knows it to be unloaded. *State v. Miller*, 71 Wn.2d 143, 146, 426 P.2d 986 (1967). In addition, Hart testified that he was afraid when defendant pointed the rifle at him as he drove away from the apartment, and when defendant pointed the rifle at him in the Jackson residence.

Defendant relies upon the following statement found in *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 505, 125 P.2d 681 (1942), and repeated in *State v. Rush*, 14 Wn.2d 138, 127 P.2d 411 (1942):

> Whether there has been an assault in a particular case depends more upon the apprehension created in the mind of the person assaulted than upon the undisclosed intention of the person committing the assault.

■ A careful analysis of *Peasley* and *Rush* leads to the conclusion that the court was not attempting to establish that a state of apprehension in the one assaulted is a necessary element of second degree assault. There is no such requirement in RCW 9.11.020 (4), quoted *supra*.

It was not error to refuse requested instruction No. 2.

Finally, defendant contends that the court erred when it submitted the issue of murder in the second degree to the jury (no error is assigned to the instruction) without submitting an instruction on manslaughter.

Appellate counsel makes an inconsistent, two-pronged argument. He urges that defendant was not guilty of second degree assault—a felony—but was, at the most, guilty of third degree assault—a misdemeanor; hence, the instruction of second degree murder was error. He then urges that an instruction of manslaughter should have been given.

■ No exception was taken and no error was assigned to the court's instruction on second degree murder. No instruction on third degree assault or on manslaughter was requested.

706

These questions were not presented to the trial court and are not properly before us on appeal. *State v. Jackson,* 70 Wn.2d 498, 503, 424 P.2d 313 (1967). As a matter of trial strategy, trial counsel apparently decided that defendant's defense would best be advanced by presenting one issue: was defendant guilty or not guilty of second degree assault? We cannot say that counsel's choice was error. Regardless of this, the record, however, would not justify an instruction on third degree assault or manslaughter.

The judgment is affirmed.

FINLEY, C. J., ROSELLINI and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.