# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47206-6-II |
| Respondent, | |
| v. | |
| ROBERT A. CREECH, | UNPUBLISHED OPINION |
| Appellant. | |

Worswick, J. — Following a jury trial, Robert Creech appeals his convictions for two counts of second degree assault while armed with a deadly weapon. Creech argues the State produced insufficient evidence to prove that Creech intended to place the victims in apprehension and fear of bodily injury and that the victims' fears were reasonable. Creech also argues that his counsel rendered ineffective assistance by failing to request an instruction on the lesser included offense of unlawful display of a weapon. We disagree and affirm Creech's convictions.

## FACTS

On November 10, 2014, Frederick Williamson and Michael Steubs were sitting together at a table outside of a Starbucks in Clark County. Creech approached Williamson and Steubs and asked for money to buy coffee. Creech stood about an arm's distance away from Williamson and Steubs. Steubs refused Creech's request for money. Creech responded, "F*** you." Verbatim Report of Proceedings (VRP) at 46. Steubs responded by insinuating Creech was a homosexual. Creech then called Steubs a "motherf***er," and Steubs responded with a

joke about his relationship with his mother. VRP at 58. Creech pulled out a knife, opened the

six-inch blade, and told Williamson and Steubs "I'd cut you both up and kill you, but I don't

want to go to jail." VRP at 47-48; VRP at 79. At trial, both Williamson and Steubs testified that

when Creech pulled the knife he kept it close to his body.[1]

> Williamson testified:
>
> [Williamson]: . . . I was kind of deeply concerned that things were escalating
> and that somebody was going to get hurt.
> [State]: Did you feel in danger at that point?
> [Williamson]: Yes, I did.

VRP at 49.

> Steubs testified:
>
> [Steubs]: [H]e was still close enough that he could have reached out and bent
> slightly and touched me on the tip of my nose with his finger. That close.
> [State]: During the time the knife was out, were you concerned for your safety?
> [Steubs]: Yes.
> [State]: Did you feel that you could be cut or stabbed?
> [Steubs]: Yes.
> [State]: Did you feel that Willy could be cut or stabbed?
> [Steubs]: Yes.

VRP at 60-61.

Steubs told Creech that the police would come and that Creech needed to leave. Creech

left and went to a park across the street. Williamson and Steubs briefly debated whether to call

911 and ultimately decided to do so. Shortly thereafter, law enforcement officers arrived and

arrested Creech at the park.

---

[1] Williamson's and Steubs's testimony differed slightly in regards to the direction of Creech's blade.

On January 8, 2015, the State charged Creech with two counts of second degree assault with a deadly weapon enhancement on each count. At trial, witnesses testified to the facts above. During closing argument, Creech's attorney described the case: "It's not surely about an assault in the second degree with a deadly weapon. But it's not charged as an unlawful display of a weapon. It's charged as an assault." VRP at 135. The jury found Creech guilty of both counts, including the deadly weapon enhancement for each.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Creech argues that the State produced insufficient evidence to support his convictions because the State did not prove that Creech intended to place the victims in apprehension and fear of bodily injury, or that the victims' fears were reasonable. We disagree.

Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime proved beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). On appeal, we draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. 157 Wn.2d at 8. In the sufficiency context, we consider circumstantial evidence as probative as direct evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). We may infer specific criminal intent of the accused from conduct that plainly indicates such intent as a matter of logical probability. 150 Wn.2d at 781. We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970,

3

*abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

RCW 9A.36.021(1)(c) provides that "[a] person is guilty of assault in the second degree if he or she . . . [a]ssaults another with a deadly weapon." The statute does not define "assault," thus, courts must resort to the common law definition. *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995). Washington recognizes three common law definitions of assault: "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). The trial court instructed the jury as follows:

> An assault is an act, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

Clerk's Papers at 16.

A.    *Intent*

Creech contends that the State provided insufficient evidence that he had the specific intent to create apprehension and a fear of bodily injury in Williamson and Steubs. We disagree.

Specific intent to create apprehension and fear of bodily harm is an essential element of second degree assault. *Byrd*, 125 Wn.2d at 713. "Intent is rarely provable by direct evidence, but may be gathered, nevertheless, from all of the circumstances surrounding the event." *State v. Gallo*, 20 Wn. App. 717, 729, 582 P.2d 558 (1978).

Steubs testified that he had not treated Creech with much dignity, which agitated Creech. In turn, Creech pulled out a six-inch knife, telling Williamson and Steubs, "I'd cut you both up

4

and kill you, but I don't want to go to jail." VRP at 48. Creech argues that his actions constituted nothing more than a statement that he was not going to do anything. But we take all evidence in the light most favorable to the State. A rational jury could have inferred that Creech's statement coupled with the pulling of a knife while standing in close proximity to Williamson and Steubs constituted an intent to create fear in Williamson and Steubs. We hold that a rational jury could have inferred the necessary intent from the evidence presented at trial.

B.       *Reasonable Apprehension and Imminent Fear*

Creech also argues that the State failed to produce sufficient evidence that Williamson's and Steubs's apprehension and fear of bodily injury was reasonable. We disagree and hold that sufficient evidence supports the jury's verdict.

Both Williamson and Steubs testified that Creech was angry, using profanity, and was standing in close proximity to Williamson and Steubs when he pulled the knife and referenced cutting and killing them. Both Williamson and Steubs testified that they felt afraid that someone would get hurt and that they were in danger.

On this record a rational jury could find that the combination of the hostile verbal encounter, Creech's agitation, the pulling of a knife, and Creech's statement that he could cut and kill Williamson and Steubs created a reasonable apprehension and fear of bodily injury.[2] *See State v. Stewart*, 73 Wn.2d 701, 705, 440 P.2d 815 (1968) ("Apprehension and fear experienced by a person at whom a gun is pointed may be inferred, unless he knows it to be unloaded.").

---

[2] Creech again argues that his statement meant, in essence, that he was not going to do anything. Because we take all evidence in the light most favorable to the State, his argument is unpersuasive.

Because after viewing the evidence in the light most favorable to the State, a rational jury could have concluded Creech acted with the specific intent to create a reasonable apprehension and imminent fear of bodily harm and did, in fact, create reasonable apprehension and fear, we conclude that there is sufficient evidence to support the second degree assault conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Creech also argues that his counsel rendered ineffective assistance by failing to request an instruction on the lesser included offense of unlawful display of a weapon. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant's right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on an ineffective assistance of counsel claim, the defendant must show that defense counsel's representation was deficient and the deficient representation prejudiced the defendant. 171 Wn.2d at 32-33. "Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

A.    *Creech Was Entitled to the Lesser Included Offense Instruction*

The threshold question is whether Creech was entitled to the lesser included offense instruction. A defendant is entitled to a lesser included offense instruction if two criteria are met: each of the elements of the lesser offense must be a necessary element of the offense charged (legal prong) and the evidence in the case must support an inference that the lesser crime was committed (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The

6

factual prong of *Workman* is satisfied when, viewing the evidence in the light most favorable to the party requesting the instruction, substantial evidence supports a rational inference that the defendant committed only the lesser included or inferior degree offense to the exclusion of the greater one. *State v. Fernandez–Medina*, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000).

As previously discussed, to convict a defendant of second degree assault, "the jury must find specific intent to create reasonable fear and apprehension of bodily injury." *State v. Ward*, 125 Wn. App. 243, 248, 104 P.3d 670 (2004) (*abrogated on other grounds by Grier*, 171 Wn.2d at 38).

To convict a defendant of unlawful display of a weapon, the State must prove that the defendant

> . . . carr[ied], exhibit[ed], display[ed], or [drew] any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifest[ed] an intent to intimidate another or that warrant[ed] alarm for the safety of other persons.

RCW 9.41.270(1). Because all elements of unlawful display of a weapon are also necessary elements of second degree assault, unlawful display of a weapon is a lesser included offense of second degree assault. RCW 9.41.270(1); RCW 9A.36.021; *Ward*, 125 Wn. App. at 248.

To justify a lesser included offense instruction for unlawful display of a weapon under the *Workman* test, the evidence had to support an inference that Creech displayed the firearm only with the intent to intimidate another or at a time and place that warranted alarm for the safety of other persons, i.e., that he committed only the lesser offense. *See Ward*, 125 Wn. App. at 248. Thus, a lesser included offense instruction is warranted only "'[i]f the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the

greater.'" *State v. Fernandez–Medina*, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000) (quoting *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)). In this context, the evidence must be viewed in the light most favorable to the party seeking the instruction. *Fernandez–Medina*, 141 Wn.2d at 455-56.

Viewing the evidence in the light most favorable to Creech, the evidence would permit a jury to rationally find Creech guilty of unlawful display of a weapon and acquit him of second degree assault with a deadly weapon. Williamson's and Steubs's description of the way Creech held the knife differed slightly, however, they both agreed that the knife was not pointed at them and that it was held close to Creech's body. Creech's statement, "I'd cut and kill you but I don't want to go to jail," did not indicate or expressly threat that Creech planned to do anything with the knife. A rational jury could interpret this evidence to create an inference that Creech meant only to intimidate Williamson and Steubs, as opposed to intending to place them in fear of bodily harm. Thus, Creech was entitled to an instruction on the lesser included offense of unlawful display of a weapon.

## B.     *Deficient Performance*

We next consider whether defense counsel's failure to seek the lesser included instruction constituted deficient performance. "The threshold for the deficient performance prong is high, given the deference afforded to [the] decisions of defense counsel in the course of representation." *Grier*, 171 Wn.2d at 33. To show deficient performance, Creech must show that defense counsel's performance fell below an objective standard of reasonableness. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). When counsel's conduct can be

characterized as legitimate trial strategy or tactics, performance is not defective. *Grier*, 171 Wn.2d at 33. Creech cannot meet this burden.

Our Supreme Court held in *Grier* that an all-or-nothing strategy can be a legitimate trial tactic that does not constitute ineffective assistance of counsel. 171 Wn.2d at 42. The Supreme Court explained that, even when "the risk is enormous and the chance of acquittal is minimal, it is the defendant's prerogative to take this gamble, provided her attorney believes there is support for the decision." 171 Wn.2d at 39.

Here, like in *Grier*, Creech fails to show that defense counsel's decision not to request a lesser included instruction was not tactical. The theme of counsel's closing argument was that the State had failed to prove Creech's specific intent to create apprehension and fear of imminent bodily harm, which is the distinguishing element between the crime of second degree assault and unlawful display of a weapon. During closing, Creech's counsel specifically argued, "[I]t's not charged as an unlawful display of a weapon. It's charged as an assault. But we know that both of the gentlemen will say, and did say from their testimony, 'I wasn't afraid; I was concerned and I was alert.'" VRP at 135. Given the facts of this case, Creech does not show that his counsel's failure to request an instruction for unlawful display of a weapon was not a strategic decision. It is not for us to question that strategy. As *Grier* noted, the "complex interplay between the attorney and the client in this arena leaves little room for judicial intervention." 171 Wn.2d at 40. Simply because defense counsel's strategy was ultimately unsuccessful does not mean that his performance was deficient. *See* 171 Wn.2d at 43 ("That this strategy ultimately proved unsuccessful is immaterial to an assessment of defense counsel's initial calculus; hindsight has no place in an ineffective assistance analysis.").

9

Creech has not met the high burden of proving that his trial counsel's performance was deficient, and therefore we reject his claim.[3]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.

---

[3] Because we hold that counsel's performance was not deficient, we do not address whether any alleged deficiency was prejudicial. *State v. Foster*, 140. Wn. App 266, 273, 166 P.3d 726 (2007).